**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MELISSA ROMANO,<br>Plaintiff,<br>vs.<br>CLARK COUNTY SCHOOL DISTRICT, *et al.*,<br>Defendants. | Case No.: 2:26-cv-01862-GMN-DJA<br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 5), filed by Plaintiff Melissa Romano. Defendants Clark County School District, Jonathan Synold, Anthony Polzien, and Paulina Quinonez filed a Response, (ECF No. 13), to which Plaintiff filed a Reply, (ECF No. 18). Further pending before the Court are Plaintiff's Motion for Default Judgment, (ECF No. 15),[1] Plaintiff's First Motion to Strike, (ECF No. 17),[2] Defendants' Motion for Leave to File Document, (ECF No. 23),[3] Plaintiff's Second Motion for

[1] As Defendants point out, obtaining a default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure, under which a party must first seek entry of default from the clerk of court before separately seeking entry of default judgment from the Court. Fed. R. Civ. P. 55(a); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Here, because Plaintiff failed to seek entry of default from the Clerk of Court before filing her Motion for Default Judgment, the Court DENIES the Motion. *See, e.g.*, *Marty v. Green*, No. 2:10-cv-01823 KJM KJN PS, 2011 WL 320303, at *3 (E.D. Cal. Jan. 28, 2011).

[2] Plaintiff's Motion seeks to strike Defendants' Motion to Dismiss, (ECF No. 16), as untimely filed. (First Mot. Strike 1:24–27, ECF No. 17). However, Defendants thereafter withdrew their Motion to Dismiss. (Not. Withdrawal 1:25–26, ECF No. 21). Because the subject of Plaintiff's First Motion to Strike has been withdrawn, the Court DENIES Plaintiff's First Motion to Strike as moot. *See, e.g.*, *PNC Equip. Fin., LLC v. California Fairs Fin. Auth.*, No. 2:11-cv-02019-GEB, 2012 WL 2872813, at *8 (E.D. Cal. July 12, 2012).

[3] Defendants seek leave to file an Answer to Plaintiff's original Complaint. (Mot. Leave 5:10–7:27, ECF No. 23). However, Plaintiff thereafter filed a First Amended Complaint, (ECF No. 24), to which Defendants filed an Answer, (ECF No. 40). Accordingly, the Court DENIES Defendants' Motion for Leave as moot.

Sanctions, (ECF No. 27),[4] Plaintiff's Emergency Motion for Status Conference, (ECF No. 38),[5] and Plaintiff's Motion to Extend Time to File Reply, (ECF No. 48).[6] Additionally pending before the Court is Plaintiff's First Motion for Sanctions, (ECF No. 25), to which Defendants filed a Response, (ECF No. 39). Finally pending before the Court are Plaintiff's Second and Third Motions to Strike, (ECF Nos. 28, 32). Defendants filed responses to both motions, (ECF Nos. 44, 45), to which Plaintiff filed replies, (ECF Nos. 50, 51).

For the reasons discussed below, the Court DENIES the Motion for Preliminary Injunction.

## I. <u>BACKGROUND</u>

This case arises out of a series of disputes between Plaintiff and the staff of Clark County School District regarding the lack of safety protocols and the treatment of Plaintiff's minor children at Foothill High School. (*See generally* First Am. Compl. ("FAC"), Ex. A to Pet. Removal, ECF No. 1-1). Plaintiff contends that the Foothill High School administration excluded her two minor daughters, R.D. and S.D., from the varsity cheer team, and excluded Plaintiff from school assemblies in alleged retaliation for Plaintiff's advocacy for, among other things, improved safety protocols at the school. (*See id.* ¶ 11). Defendants offer a different

---

[4] Plaintiff's Second Motion for Sanctions, (ECF No. 27), is styled as a Response to Defendants' Motion to Dismiss, (ECF No. 16), but contains a motion for sanctions against Defendants for using fake caselaw in their Motion to Dismiss. (Second Mot. Sanctions 7:22–9:20, ECF No. 27). However, Defendants informed Plaintiff of the presence of fake caselaw in their Motion to Dismiss and moved to withdraw that motion before Plaintiff moved for sanctions. (Resp. First Mot. Sanctions 3:17–4:15, ECF No. 30). Because the challenged pleading had already been withdrawn before Plaintiff moved for sanctions, the Court DENIES Plaintiff's Second Motion for Sanctions. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (reversing award of Rule 11 sanctions where the motion for sanctions was served and filed after the challenged pleading had been dismissed).

[5] Plaintiff moves for a status conference or an immediate ruling on her Motion for Preliminary Injunction. (Emergency Mot. Status Conf. 1:24–2:3, ECF No. 38). Because the Court denies Plaintiff's Motion for Preliminary Injunction in this order, the Court DENIES Plaintiff's Emergency Motion for Status Conference as moot.

[6] Plaintiff moves for a two-day extension of time to file a Reply in support of her First Motion for Sanctions, (ECF No. 25). Plaintiff's Reply was originally due on August 5, 2026, while the Motion to Extend Time was filed on August 7, 2026. (*See* Mot. Extend, ECF No. 48). The Court finds that Plaintiff has shown excusable neglect and thus GRANTS the Motion to Extend Time.

version of events, casting their allegedly retaliatory exclusion of Plaintiff from school events and S.D. and R.D. from the varsity cheer team as wholly unrelated to Plaintiff's advocacy. (*See* Resp. Mot. Prelim. Inj. ("PI") 2:2–8:8, ECF No. 13).

**A. Assault on E.D.**

Plaintiff's advocacy began in May 2025, when Plaintiff's son, E.D., was assaulted by another Foothill High School student. (FAC ¶¶ 12–13). Plaintiff thereafter reported the assault to the Foothill High School administration and requested a safety plan to protect E.D. from his assailant. (*Id.* ¶¶ 14–18). Plaintiff alleges that despite her requests, no safety plan was implemented. (*Id.* ¶ 17). Later that year, in August 2025, Foothill High School implemented a new policy preventing parents from attending school assemblies, which Plaintiff alleges was only communicated through a private memo sent exclusively to school personnel. (*Id.* ¶¶ 25–26). Plaintiff was subsequently prevented from attending a school assembly where her daughters performed. (*Id.* ¶ 25). She discussed the new policy with Defendant Jonathan Synold, Foothill High School's principal, multiple times. (*Id.* ¶ 26).

**B. S.D.'s Head Injury**

In October 2025, during a cheer performance at a football game, S.D. fell on her head while performing a stunt. (*Id.* ¶ 32). Plaintiff alleges that despite witnessing the incident, Defendants did not remove S.D. from the performance or initiate concussion protocol. (*Id.* ¶ 33). Plaintiff emailed Defendant Polzien, Foothill High School's assistant principal, the next day and requested that S.D. be placed on concussion protocol, but Defendant Polzien declined. (*Id.* ¶ 35). Concussion protocol was eventually initiated by a school nurse, and S.D. ultimately missed five weeks of school. (*Id.* ¶ 36). When S.D. returned to school, she suffered another injury to her eye while loading the cheer team's bus in preparation for a football game. (*Id.* ¶ 37). Plaintiff alleges that Defendant Quinonez, the coach of Foothill High School's varsity cheer team, directed S.D. to get on the cheer bus anyway. (*Id.*). Following that incident,

Plaintiff submitted a series of written complaints to school administration detailing concerns with Defendant Quinonez's conduct and performance. (*Id.* ¶ 38). Despite these complaints, Plaintiff alleges that the school administration took no action and only held a meeting with Defendant Quinonez two months later after continued pressure from Plaintiffs and other parents. (*Id.* ¶¶ 39–42). Defendants allege that they met with Defendant Quinonez several times following Plaintiff's written complaints but did not inform Plaintiff of those meetings because "personnel matters are confidential." (Resp. Mot. PI 5:24–28).

**C. Varsity Cheer Tryouts**

Finally, in May 2026, S.D. and R.D., members of the previous year's varsity cheer team at Foothill High School, participated in tryouts for the next year's varsity cheer team (the "Cheer Squad"). (FAC ¶¶ 46–58). Though R.D. and S.D. initially attempted to register for the tryouts after the registration deadline had passed, they were allowed to try out after an appeal to school administration. (*Id.* ¶¶ 46–47). The tryouts proceeded in two phases: applicants were first interviewed by Cheer Squad coaches and then performed various cheerleading stunts. (*Id.* ¶¶ 49–51). After completing their interviews, R.D. was pulled aside by Defendant Quinonez, who allegedly confronted her about her answers to interview questions. (*Id.* ¶ 49). Upset by the conversation, R.D. thereafter filed a "Safe Voice" bullying report against Defendant Quinonez, which was brought to school administration. (*Id.* ¶ 50).

Thereafter, both R.D. and S.D. participated in the performance phase of the tryouts but were ultimately not selected for the Cheer Squad. (*Id.* ¶ 51). Plaintiff alleges that her daughters, who were both previously members of the Cheer Squad, "performed flawlessly" during the tryout and were only excluded from the Cheer Squad as retaliation for Plaintiff's advocacy. (*Id.*). Defendant Quinonez stated that Plaintiff's daughters were not selected due to their performance in the tryout and an excess amount of tardies and absences on their records. (*Id.* ¶ 53).

Plaintiff asserts the following claims in her First Amended Complaint: (1) First Amendment Retaliation under 42 U.S.C. § 1983, (2) violation of the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution under 42 U.S.C. § 1983, (3) negligence, (4) intentional infliction of emotional distress, (5) declaratory and injunctive relief, (6) negligent infliction of emotional distress, (7) fraudulent misrepresentation, (8) civil conspiracy, and (9) Title IX retaliation. (*Id.* ¶¶ 71–139). Plaintiff seeks an order from this Court (1) immediately reinstating R.D. and S.D. to the Foothill Varsity Cheer Squad for the 2026-2027 school year, (2) reinstating R.D. to her former position as captain of the Foothill Varsity Cheer Squad, (3) temporarily reassigning Defendant Quinonez to a position in which she has no supervisory authority over R.D. and S.D., (4) enjoining Defendants from enforcing their school assembly policy in a retaliatory or inconsistent manner, and (5) ordering Foothill High School to follow concussion protocol and all student safety protocol under Nevada Revised Statute ("NRS") 392.452. (Mot. PI 30:24–31:8, ECF No. 5); (Proposed Order 4:2–5:24, ECF No. 14).

## II. <u>LEGAL STANDARD</u>

### A. Preliminary Injunction

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish four elements: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Id.* at 20. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (internal quotation marks omitted).

///

**B. Motion for Sanctions**

There are three bases on which a Court may levy sanctions against a party: "(1) Federal Rule of Civil Procedure 11, which applies to signed filings with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

First, under FRCP 11, sanctions may be imposed on any attorney, law firm, or party "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. City of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); *see also* Fed. R. Civ. P. 11(b). The Court "has significant discretion in determining what sanctions, if any, should be imposed for a violation" of Rule 11. Committee Notes on Amendments to Federal Rule of Civil Procedure, 146 F.R.D. 401, 587 (1993).

Second, 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy the personal excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[R]ecklessness suffices [for sanctions] under § 1927, but bad faith is required for sanctions under the court's inherent power." *Fink*, 239 F.3d at 993.

Finally, the Court may impose sanctions under its inherent authority for willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* at 991. "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs.,*

*Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1987) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

## III. DISCUSSION

The Court first addresses Plaintiff's Motion for Preliminary Injunction, before turning to the remaining motions pending in this case.

### A. Plaintiff's Motion for Preliminary Injunction

Plaintiff asserts that she is entitled to a Preliminary Injunction because she is likely to succeed on the merits, and both she and her minor children will suffer irreparable harm in the absence of an injunction. (*See generally* Mot. PI). The Court addresses each of the *Winter* factors in turn, beginning with Plaintiff's likelihood of success on the merits.

#### 1. Likelihood of Success on the Merits

The Court analyzes Plaintiff's likelihood of success on the merits on each of Plaintiff's claims[7] for which injunctive relief would be appropriate, beginning with Plaintiff's claim for First Amendment Retaliation under 42 U.S.C. § 1983.

##### a. First Amendment Retaliation

To prevail on a claim for First Amendment Retaliation, a plaintiff must show that they (1) were engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial motivating factor in the defendant's conduct. *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

With respect to the first and second elements, Plaintiff contends that her complaints to the school administration about student safety were constitutionally protected, and that her

---

[7] On July 15, 2026, Plaintiff filed a First Amended Complaint, (ECF No. 24), which contains additional claims not present in her original Complaint. However, because the original Complaint was the operative pleading at the time Plaintiff filed her Motion for Preliminary Injunction, the Court will limit its consideration of Plaintiff's likelihood of success on the merits to the claims included in her original Complaint.

daughters' exclusion from the cheer squad was a significant adverse action that would chill a reasonable person from further advocacy. (Mot. PI 21:6–18). Defendants do not dispute that Plaintiff's advocacy constitutes constitutionally protected activity and offer little argument with respect to the second element. (*See* Resp. Mot. PI 9:21–12:18). In a similar case, the Ninth Circuit held that high school athletes' complaints to district officials requesting the resignation of their coach constituted protected speech, and that the athletes' subsequent suspension for making those complaints would lead ordinary student athletes in their position to refrain from complaining about the coach to remain on the team. *Pinard*, 467 F.3d at 768–71. Based on that holding, and Defendants' lack of argument on this issue, the Court agrees that parental complaints to school officials are constitutionally protected activity, and that the exclusion of Plaintiff's daughters from the Foothill Varsity Cheer Squad would chill a person of ordinary firmness from continuing to engage with the school administration. Plaintiff has therefore satisfied the first two elements of her First Amendment Retaliation claim.

The parties' arguments center around the third element, whether the protected activity was a substantial motivating factor in the defendant's conduct. The Ninth Circuit has identified at least three "nonexclusive categories" of evidence that are probative of motive: "(1) proximity in time between the protected speech and the alleged retaliation; (2) the [defendants'] expressed opposition to the speech; and (3) other evidence that the reasons proffered by the [defendants] for the adverse . . . action were false and pretextual." *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002).

Here, Defendants argue that Plaintiff's daughters were not excluded from the Cheer Squad because of Plaintiff's advocacy, but rather because they received low scores at tryouts, performed poorly in interviews, and had too many absences and tardies on their records. (Resp. Mot. PI 10:6–11:7). Plaintiff argues that the temporal proximity between her complaints and cheer tryouts, Defendant Quinonez's statements prior to tryouts, and the design of tryout

questions to probe complaint-related topics all point to a causal connection between her advocacy and her daughters' exclusion from the squad. (Mot. PI 21:19–28). Further, Plaintiff casts Defendants' explanation for her daughters' exclusion as a pretextual post-hoc rationale, asserting that her daughters were intentionally given low scores by biased tryout judges, and their absences and tardies were inflated. (Reply Mot. PI 2:23–10:3, ECF No. 18).

The Court concludes that Plaintiff has failed to meet her burden on this element for several reasons. First, roughly four months separated Plaintiff's final complaint about Defendant Quinonez and the cheer tryouts, undermining Plaintiff's temporal proximity argument. *See Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that four-month lapse between protected activity and adverse action not sufficient evidence of causation) (citing *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992)). Further, as Defendants explain, after being informed of Plaintiffs' complaints, Defendant Quinonez implemented changes to the cheer program which Plaintiff herself described as positive in a January 15, 2026, email to Defendant Synold, further undermining the temporal proximity between Plaintiff's advocacy and her daughters' exclusion from the Cheer Squad. (Resp. Mot. PI 6:7–15).

Second, Plaintiff's reliance on *Pinard* is misplaced. The Ninth Circuit in *Pinard* did not address the third element of the plaintiffs' First Amendment Retaliation claim, instead remanding to the district court on that issue. 467 F.3d at 771. On remand, the district court found that element satisfied in part because of the temporal proximity between the students' complaints about their coach and their suspension. *See Pinard v. Clatskanie School Dist. 6J*, No. 03-172-HA, 2008 WL 410097, at *2–4 (D. Or. Feb. 12, 2008). There, the complaining students were suspended two days after lodging their complaints, a time period far shorter than that in this case. (*Id.* at *3).

Third, Plaintiff's pretextual arguments fare no better. Plaintiff asserts that her daughters

gave “flawless tryouts,” but the scoring rubrics paint a different picture. (Mot. PI 21:13). R.D. scored a total of ten points out of a possible fifteen on the performance portion of the tryout and scored six points out of a possible twenty on the interview portion. (*See* Tryout Score Sheets at 6–9, Ex. H to Resp. Mot. PI, ECF No. 13-8). S.D. also received ten points out of a possible fifteen on the performance portion, and eight points out of twenty on the interview portion. (*See id.* at 2–5). Second, the scoring rubrics explicitly state that a student with twenty or more tardies will not be eligible for team selection; here, R.D. had twenty-three tardies in the 2025-2026 school year, and S.D. had seventy-six. (*Id.* at 2, 6); (R.D. Report Card at 2, Ex. 16 to Suppl., ECF No. 9-16); (S.D. Report Card at 2, Ex. 17 to Suppl., ECF No. 9-17).

In her Reply, Plaintiff challenges the legitimacy of her daughters’ tryout scores, arguing that the judge who scored both daughters, Taylor Terry, was a longtime friend of Defendant Quinonez who had “every motive to retaliate against [Plaintiff’s] children for her protected advocacy.” (Reply Mot. PI 3:23–27). However, this argument amounts to little more than speculation on Plaintiff’s part. Plaintiff offers no evidence to establish Terry’s bias aside from social media posts picturing Defendant Quinonez standing with Terry and the assertion that the odds of Terry judging both R.D. and S.D. was just over six percent.[8] (*Id.* 6:6–7:12). Plaintiff similarly challenges the accuracy of her daughters’ attendance records, alleging that the number of absences and tardies was inflated “by counting absences per class.” (*Id.* 9:4–5). However, R.D. and S.D.’s report cards reveal that the number of tardies listed on their scoring rubrics are accurate; indeed, S.D.’s scoring rubric undercounts her tardies by one, listing seventy-five while her report card lists seventy-six. (*Compare* Tryout Score Sheets at 2, Ex. H to Resp. Mot. PI, ECF No. 13-8 *with* S.D. Report Card at 2, Ex. 88 to Suppl., ECF No. 9-17). Further, the

[8] In making this argument, Plaintiff appears to invite the Court to infer that Terry was chosen to judge both daughters as part of a coordinated effort to dilute their scores. (Reply Mot. PI 7:1–12). However, as Plaintiff points out, the other three possible judges were also “lifelong friends” of Defendant Quinonez. (*Id.* 5:17–18). Even assuming, *arguendo*, that any friend of Defendant Quinonez would harbor a bias against Plaintiff’s daughters, Plaintiff fails to show why Terry would be any more biased than the other three “lifelong friends.”

scoring rubric explicitly states that having more than twenty tardies renders a student ineligible for the Cheer Squad. (Tryout Score Sheets at 2, 6, Ex. H to Resp. Mot. PI).

The remainder of Plaintiff's arguments are similarly unavailing. While Plaintiff contends that the questions asked in both her daughters' interviews were related to her complaints, Plaintiff describes the questions as relating to leadership and conflict resolution, topics typical for high school extracurricular activities. (Mot. PI 16:17–18). Moreover, the scoring rubrics reveal other reasons for R.D. and S.D.'s low scores; namely, short and insufficient responses, a lack of eye contact, distracted demeanor, and an overall lack of interest. (*See* Tryout Score Sheets at 5, 9, Ex. H to Resp. Mot. PI). Finally, as Defendants point out, Plaintiff's daughters missed the registration deadline for the cheer tryouts but were permitted to tryout anyway. (Resp. Mot. PI 6:19–7:5). If Defendants were searching for any pretextual grounds on which to exclude Plaintiff's daughters from the Cheer Squad, the missed deadline would have been the perfect candidate; yet, Defendants allowed both R.D. and S.D. to attend the tryouts.

Accordingly, the Court concludes that Plaintiff has not shown a likelihood of success on the merits of this claim.

**b. Violation of NRS 392.452, 392.457, 392.497**

Plaintiff next contends that she is likely to succeed on her "statutory claims" under NRS 392.452, 392.457, and 392.497. (Mot. PI 22:5–24:4). However, Plaintiff does not assert a claim for violation of any of those three statutes in her First Amended Complaint. (*See* Compl. ¶¶ 65–119, Ex. A to Pet. Removal). While Plaintiff invokes those state statutes in support of her claims for violation of the Due Process Clause of the Fourteenth Amendment, negligence, and negligent infliction of emotional distress, she asserts no standalone claim under NRS 392.452, 392.457, or 392.497.[9] (*See id.* ¶¶ 84, 94, 115). Moreover, even if Plaintiff had

---

[9] Despite its best efforts, the Court has been unable to locate NRS 392.497. Plaintiff is warned that citing fake

asserted claims for violation of those statutes, she has failed to show a likelihood of success on the merits.

First, under NRS 392.452, each school district must implement a injury prevention policy whereby a pupil who is suspected of sustaining a head injury or concussion while participating in competitive sports (1) must be immediately removed from the competitive sport, and (2) may return to the sport only after a qualified medical provider provides a written statement indicating that the pupil is medically cleared to return. Nev. Rev. Stat. 392.452(1)–(2). Plaintiff asserts that she is likely to succeed on the merits of a claim for violation of NRS 392.452 because Defendants witnessed S.D.'s October 2025 head injury yet failed to immediately remove her from the performance and declined to initiate concussion protocol. (Mot. PI 22:15–24). Defendants contend that a claim for violation of NRS 392.452 cannot support Plaintiff's request for injunctive relief because it pertains to a past injury, and Plaintiff does not establish an immediate threat of future injury absent an injunction. (Resp. Mot. PI 16:17–26) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). Plaintiff does not address this argument in her Reply. (*See generally* Reply Mot. PI).

In order to have standing for prospective injunctive relief, a plaintiff must establish a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *Lyons*, 461 U.S. at 103. Rather, a plaintiff is not entitled to an injunction against past illegal conduct unless they demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *Id.* at 111. Here, Plaintiff has not shown a sufficient likelihood that her daughters will again suffer a head injury without immediately being placed on concussion protocol, primarily because they are no longer on the Foothill Varsity Cheer Squad. Accordingly, the Court concludes that a claim for violation of NRS

---

authorities is a sanctionable offense under Rule 11 of the Federal Rules of Civil Procedure.

392.452, even if properly pled, would not support Plaintiff's request for injunctive relief.

Second, under NRS 392.457, school districts must adopt and implement policies "to encourage effective involvement and engagement by parents and families in support of their children and the education of their children." Nev. Rev. Stat. 392.457(1). However, the Nevada Supreme Court has recognized that NRS 392.457 does not provide a private right of action. *Frudden v. Pilling*, No. 61932, 2014 WL 7188788, at *1, n. 2 (Nev. 2014) (affirming lower court dismissal of claim for violation of, among others, NRS 392.457 because no private right of action exists under the statute). In sum, even if Plaintiff had pled claims under NRS 392.452 and 392.457, she has not shown that she is likely to succeed on those claims.

**c. Due Process**

Plaintiff's claims for violation of the Due Process clause of the Fourteenth Amendment of the United States Constitution fare no better. To state a substantive or procedural due process claim, a plaintiff must first identify a liberty interest protected by the Constitution. *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014). Second, a plaintiff must show that the defendant's conduct was so outrageous that it may fairly be said to shock the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998).

Plaintiff's Complaint asserts that she has a fundamental liberty interest in the care, custody, and control of her minor children. (Compl. ¶ 81, Ex. A to Pet. Removal) (citing *Troxel v. Granville*, 530 U.S. 57 (2000); *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)). Further, Plaintiff identifies three fundamental liberty interests held by her children: (1) a liberty interest in their good name, reputation, honor, integrity, and freedom from arbitrary stigmatization by state actors; (2) a liberty interest in personal security and freedom from known, unaddressed threats of physical and emotional harm while under the control of school officials; and (3) a liberty interest in being free from arbitrary and conscience-shocking state action that interferes with their ability to fully participate in the educational

environment. (*Id.* ¶ 82) (citing *Paul v. Davis*, 424 U.S. 693 (1976); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)). Defendants contend that no constitutionally protected liberty interest is implicated in this case because students have no constitutional right to participate in extracurricular activities, and that Plaintiff has no constitutionally protected right to direct how a public school teaches her children. (Resp. Mot. PI 13:3–14:28). Further, Defendants assert that the decision not to select Plaintiff's daughters for the Cheer Squad was not "egregious" because they scored poorly at tryouts and had too many tardies on their records. (*Id.*).

The Court agrees that Plaintiff has failed to show a likelihood of success on the merits of her Due Process claim. Even assuming, *arguendo*, that the liberty interests identified by Plaintiff are applicable to the facts of this case,[10] Plaintiff has still failed to show that her daughters' exclusion from the Cheer Squad was so egregious that it shocks the conscience. As explained above, Plaintiff has failed to show that her daughters' exclusion from the Cheer Squad was motivated by retaliatory animus. (*See* Section III(A)(1)(a)). Rather, the evidence provided by the parties suggests that Plaintiff's daughters simply did not make the team based on low scores at tryouts and poor attendance records. (*Id.*). Accordingly, the Court concludes that Plaintiff has failed to show a likelihood of success on the merits of her Due Process claim.

**d. Equal Protection**

To prevail on a claim for violation of the Equal Protection clause of the Fourteenth Amendment, a plaintiff must show (1) that the defendant intentionally discriminated against them based on the plaintiff's membership in a protected class, or (2) that the defendant intentionally treated them differently from others similarly situated and there is no rational

[10] None of the cases on which Plaintiff relies resemble the facts of this case. *See Troxel*, 530 U.S. at 67, 75 (holding that state statute permitting state-court review of parent's decision regarding visitation of minor child infringed on liberty interest in custody, care, and control of children); *Meyer*, 262 U.S. at 400–03 (holding that state statute criminalizing teaching students a language other than English before eighth grade infringed on right to acquire useful knowledge); *Pierce*, 268 U.S. at 532–35 (holding that state statute requiring children to attend public school infringed on parent's right to make choices for their children outside the home).

basis for the difference in treatment (the "class-of one theory"). *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)); *see also Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000).

Plaintiff offers little argument on this claim in her Motion for Preliminary Injunction. (*See* Mot. PI 24:6–15). Plaintiff's Complaint explicitly invokes the "class-of-one" theory,[11] alleging that Plaintiff was excluded from school events while similarly situated parents were not, and that her daughters were excluded from the Cheer Squad while other students with comparable or lesser qualifications were retained. (Compl. ¶ 88, Ex. A to Pet. Removal). Defendants argue that Plaintiff has not shown evidence of intentional discrimination, nor the lack of a rational basis for any school decision raised by Plaintiff. (Resp. Mot. PI 15:2–16:9). Plaintiff does not address these arguments in her Reply. (*See generally* Reply Mot. PI).

The Court addresses the two allegations of differential treatment in Plaintiff's Complaint in turn. First, Plaintiff has shown that she was treated differently from other similarly situated parents when she was prevented from attending the first assembly of the school year. (Mot. PI 14:10–15:9). Specifically, while she was not permitted to attend the assembly, the parents of the student council president were allowed to attend. (*See* Email to J. Synold re Assembly Attendance, Ex. 12 to Mot. PI, ECF No. 5-14). Plaintiff was similarly situated to the student council president's parents in that both their children were performing at the assembly; Plaintiff's daughters were performing with the Cheer Squad, and the student council president was giving a speech. (*Id.*); (Mot. PI 15:1–9). However, Plaintiff has not shown that there was no rational basis for the differential treatment. Indeed, as Defendant Synold explains, the student council president's parents were allowed to attend the assembly because it was their only opportunity to see their child speak. (Synold Decl. ¶ 14, Ex. A to Resp. Mot. PI, ECF No.

---

[11] Because Plaintiff does not argue that she or her daughters are members of a protected class, the Court analyzes Plaintiff's Equal Protection claim solely under the "class-of-one" theory. (*See* Compl. ¶¶ 88–91); *Olech*, 528 U.S. at 564–65.

13-1). Conversely, Plaintiff was able to watch her daughters perform the same routine at school basketball and football games, which parents can freely attend. (*Id.* ¶¶ 14–15).

Second, Plaintiff has not shown that her daughters were treated differently from other, similarly situated Cheer Squad candidates. While Plaintiff alleges that "students with comparable or lesser qualifications" made the Cheer Squad while her daughters did not, Plaintiff provides no evidence to show such disparate treatment. (*Id.* ¶ 88); (*see generally* Mot. PI); (*see generally* Reply Mot. PI). Because a motion for preliminary injunction must be supported by "[e]vidence that goes beyond the unverified allegations of the pleadings," Plaintiff cannot rely on her Complaint to show a likelihood of success on the merits on this claim. *Fidelity Nat'l Title Ins. Co. v. Castle*, No. C-11-0896 SI, 2011 WL 5882878, at *3 (N.D. Cal. Nov. 23, 2011) (quoting 9 Wright & Miller, Federal Practice & Procedure § 2949 (2011)) (internal quotation marks omitted). Accordingly, the Court concludes that Plaintiff has failed to show a likelihood of success on the merits of her Equal Protection claim.

**e. Remaining Claims**

While Plaintiff asserts additional claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress, (Compl. ¶¶ 93–119), she does not brief her likelihood of success on the merits of those claims in her Motion for Preliminary Injunction. (*See generally* Mot. PI). Again, because Plaintiff cannot rely on the allegations in her Complaint at the preliminary injunction stage, the Court finds that Plaintiff has not shown a likelihood of success on the merits of her remaining claims. *Castle*, 2011 WL 5882878 at *3.

In sum, the Court finds that Plaintiff has not shown a likelihood of success on the merits of any of her claims. Because it is a threshold issue, if plaintiff fails to show likelihood of success, the Court generally need not consider the other three *Winter* elements. *Garcia v. Google, Inc.*, 786 F3d 733, 740 (9th Cir. 2015); *Baird v. Bonta*, 81 F4th 1036, 1040 (9th Cir. 2023). Accordingly, her Motion for Preliminary Injunction is DENIED.

**B. Plaintiff's First Motion for Sanctions**

The Court turns next to Plaintiff's First Motion for Sanctions. Plaintiff argues that Defendants made two false representations of fact in their Response to the Motion for Preliminary Injunction: (1) Defendants falsely described the Cheer Tryouts as being judged by "four independent, outside judges with cheer or dance backgrounds and no connection to the school," and (2) inflated R.D. and S.D.'s absences. (First Mot. Sanctions 5:19–10:19, ECF No. 25). Plaintiff seeks an Order from the Court that, among other things, enters default judgment against Defendants, strikes Defendants' Response to the Motion for Preliminary Injunction in its entirety, and awards Plaintiff reasonable attorneys' fees and costs. (*Id.* 16:25–19:7). The Court addresses each alleged misrepresentation in turn.

Plaintiff contends that Defendants' description of the Cheer Tryouts was fraudulent in four respects. First, Plaintiff argues that the judges were not independent because they were all "lifelong friends" with Defendant Quinonez. (*Id.* 5:21–6:14). In support of that assertion, Plaintiff points to a substantial number of social media posts featuring one or more of the judges and Defendant Quinonez together. (*See id.* 5:21–6:14). However, even if the judges were friends with Defendant Quinonez, Plaintiff produces no evidence showing that one or more of the four judges were influenced by Defendant Quinonez's view of Plaintiff or her daughters. At most, Plaintiff asks the Court to infer that the judges *could not have been* independent because of their relationship with Defendant Quinonez. Accordingly, Plaintiff has failed to show that describing the judges as "independent" was a false representation of fact. Second, Plaintiff contends that one of the judges, Taylor Terry, did not have a cheer or dance background because her high school yearbook did not list participation in the cheer program. (*Id.* 7:15–22). To have a background in cheer *or* dance does not require membership in one's high school cheer team—here, Terry could very well have participated in cheer or dance activities outside of school. Thus, Plaintiff has not shown that Defendants misrepresented the

judges' cheer and dance backgrounds.

Third, Plaintiff argues that the judges had a connection to Foothill High School because they are all Foothill alumni. (*Id.* 6:15–7:14). However, as Defendants point out, just because the judges attended Foothill High School as children does not mean that they have an ongoing connection with the school. (Resp. Mot. Sanctions 4:10–15, ECF No. 39). None of the four judges are currently employed by the school, and each graduated in 2016 or 2017, nearly ten years prior to the instant tryouts. (Mot. Sanctions 6:15–7:14). Plaintiff has thus failed to show that describing the judges as having no connection to the school was a false representation. Finally, Plaintiff avers that because only one judge out of the four scored each cheer applicant, Defendants' description of the tryouts being judged by four judges was a misrepresentation. (*Id.* 7:23–8:18). However, Defendants never claimed that *each applicant* for the Cheer Squad was scored by each of the four judges. Rather, Defendants claimed that the tryouts as a whole were judged by four judges. (*See* Quinonez Decl. ¶ 18, Ex. B to Resp. Mot. PI, ECF No. 13-2). Accordingly, Plaintiff has failed to show that Defendants' description of the tryouts was a false representation of fact.

With respect to her daughters' attendance records, Plaintiff also fails to show that Defendants made materially false representations of fact. Here, Plaintiff relies on her daughters' report cards, which state that R.D. had 10.50 absences during the 2025-2026 school year, while S.D. had 11.00. (*See* R.D. Report Card at 2, Ex. 16 to Suppl.); (*see also* S.D. Report Card at 2, Ex. 17 to Suppl.) Plaintiff contrasts those numbers with the Defendants' assertion that R.D. had fifty-nine absences in the 2025-2026 school year, and that S.D. had thirty-six absences in the fourth quarter of that year. (Resp. Mot. PI 10:14–18). However, Defendants did not falsely represent the number of absences but rather expressed them in a different format; Plaintiff's numbers correspond to the number of school days missed, whereas Defendants' numbers correspond to school *periods* missed. (Resp. Mot. Sanctions 5:10–26). Indeed, R.D.

and S.D.'s official attendance records also express their absences in terms of periods missed, and provide absence counts that *exceed* Defendants' representations. (*See* R.D. Attendance Record at 2, Ex. G to Resp. Mot. PI, ECF No. 13-7); (*see also* S.D. Attendance Record at 2, Ex. F to Resp. Mot. PI, ECF No. 13-6).

Having concluded that Defendants did not make materially false representations of fact to the Court, the Court DENIES Plaintiff's First Motion for Sanctions.[12]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 5), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment, (ECF No. 15), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Motion to Strike, (ECF No. 17), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's First Motion for Sanctions, (ECF No. 25), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Document, (ECF No. 23), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Sanctions, (ECF No. 27), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion to Strike, (ECF No. 28), is **DENIED**.

///

---

[12] Plaintiff's Second and Third Motions to Strike, (ECF Nos. 28 and 32), both argue that Defendants' Response to Motion for Preliminary Injunction should be stricken because it contains the same two allegedly false misrepresentations of fact which are the subject of Plaintiff's First Motion for Sanctions. (*See generally* Mots. Strike, ECF Nos. 28, 32). Because the Court concludes that those statements were not materially false representations of fact, the Court DENIES Plaintiff's Second and Third Motions to Strike.

**IT IS FURTHER ORDERED** that Plaintiff's Third Motion to Strike, (ECF No. 32), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion for Status Conference, (ECF No. 38), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Extend Time to File Reply, (ECF No. 48), is **GRANTED**.

**DATED** this 12 day of August, 2026.

___________________________
Gloria M. Navarro, District Judge
United States District Court